UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JUDY KOCH-GULOTTY,

          Plaintiff,

v                                                           Case No. 18-11631
                                                           Honorable Thomas L. Ludington

R.L. MORGAN COMPANY,

          Defendant.

_____/

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DISMISSING COMPLAINT**

On May 23, 2018, Plaintiff Judy Koch-Gulotty filed a complaint against Defendant R.L. Morgan Company, a hardware store. ECF No. 1. Plaintiff alleges that while on Defendant's premises she was "severely injured when she tripped and fell due to a lawn edger that was sticking out into an aisle in an extremely unsafe manner." *Id.* at 2. On March 5, 2019, Defendant filed a motion for summary judgment. ECF No. 18. For the following reasons, Defendant's motion will be granted.

**I.**

According to Plaintiff, on or about July 4, 2017, Plaintiff entered Defendant's store. ECF No. 1 at 2. Defendant's employee, Adam Podboy, greeted Plaintiff and led her down the store's main aisle to help her locate an item. ECF No. 20 at 1. While walking down the main aisle, Mr. Podboy turned left down an aisle that intersected the main aisle perpendicularly. *Id.* Plaintiff followed Mr. Podboy and tripped on a lawn edger "that was sticking out into the aisle." *Id.* at 2. Plaintiff claims that her encounter with the edger left her with a wounded ankle and a "meniscal tear resulting to [sic] a knee replacement and other complications." ECF No. 1 at 2.

On May 23, 2018, Plaintiff filed a complaint against Defendant, alleging that it was liable for premises liability and negligence. *Id.* at 2–6.

**II.**

Defendant has now filed a motion for summary judgment. ECF No. 18. A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

**III.**

In diversity cases like this one, federal courts "must apply the substantive law of the state in which the court sits." *Mill's Pride, Inc. v. Cont'l Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002). Thus, this Court will apply Michigan's substantive laws. Accordingly, the question is whether, viewing the evidence in a light most favorable to Plaintiff, there are genuine issues of material fact regarding his premises liability claim and negligence claim.

Michigan law provides that, "[i]n a premises liability action, a plaintiff must prove (1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached the duty, (3) that the

defendant's breach of the duty caused the plaintiff's injuries, and (4) that the plaintiff suffered damages." *Kennedy v. Great Atl. & Pac. Tea Co.*, 274 Mich. App. 710, 712 (2007).

"In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v. Ameritech Corp.*, 464 Mich. 512, 516 (2001). "However, where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee." *Riddle v. McLouth Steel Prod. Corp.*, 440 Mich. 85, 96 (1992). In other words, "[a] premises possessor is generally not required to protect an invitee from open and obvious dangers." *Kennedy*, 274 Mich. App. at 713.

Defendant contends that Plaintiff's complaint should be dismissed because the edger was open and obvious and there were no special aspects making the condition unreasonably dangerous or effectively unavoidable. *See generally* ECF No. 18. Each of these arguments will be addressed in turn.

**A.**

A premises possessor "'owes no duty to protect or warn' of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94 (2012) (quoting *Riddle v. McLouth Steel Prod. Corp.*, 440 Mich. 85 (1992)). It is an objective standard, determining "[w]hether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id.* at 94–95.

Defendant quotes three separate depositions to supports its argument that the edger's placement was open and obvious. First, it quotes Mr. Podboy's deposition, which provides:

Q: Okay. As one is walking down Aisle 1 from the main entrance towards that end cap, is the edger visible?

A: Yes.

Q: Is it hidden?

A: No.

Q: If a person were walking down that aisle and watching where they were going on July 5th of 2017, would the edger be visible to them?

A: Yes.

Podboy Dep. at 30, Ex. 2, ECF No. 18-3.

Defendant next quotes the deposition of the store manager, Timothy Stevens. He testified as follows:

Q: You saw and observed the lawn edger shortly after this incident occurred; is that correct?

A: Yes.

Q: Was it plainly visible to anyone walking down aisle No. 1?

A: Once you got to that middle aisle, yes.

Q. Okay. Was it plainly visible once you got to the cross aisle there?

A. Yes.

Q. Okay. It wasn't hidden or obscured, was it?

A. Correct. It was not.

Q. If somebody were watching where they were going, they would have seen it?

A. Yes.

Stevens Dep. at 16, Ex. 3, ECF No. 18-4.

Lastly, Defendant quotes Plaintiff's deposition. It provides:

> Q: When you looked to see what you had tripped on, you saw this piece of equipment sticking out into the aisle?
>
> A: Okay.
>
> Q: Is that correct?
>
> A: Part of it was sticking out, yes.
>
> Q: And you could see that?
>
> A: After I turned around and looked, yes, part of it was sticking out.

Pl.'s Dep. at 69, ECF No. 18-2.

Defendant also provides a photograph taken by Stevens the same day the incident occurred. ECF No. 18-5. The photograph shows the edger with a tape measure stretched across the aisle, indicating that there were at least three feet of open aisle space between the edger and the opposite shelving unit. Defendant also provides three photographs of the aisle and an edger of the same make and model placed in the same position as the original edger. ECF No. 18-6. The three photographs are accompanied by an affidavit from Stevens testifying that he had taken the photographs about six months after the incident and that there had "been no change to the size of the aisleways or positioning of the shelving units" since the original incident. *Id.*

In her response brief, Plaintiff gives only cursory attention to whether the edger was "open and obvious." She argues that "[w]hile Plaintiff contends that the condition was not open and obvious, it exhibited special aspects under Michigan case law." ECF No. 20 at 5. Plaintiff provides no evidence or explanation to support her assertion that the edger was not open and obvious. Instead, she dedicates the majority of her argument to the theory of "special aspects" which only applies when a condition is open and obvious.

The depositions and photographs support the assertion that an average person with ordinary intelligence would have noticed the edger through casual inspection. *See Hoffner v. Lanctoe*, 821 N.W.2d 88, 94–95 (2012). As Plaintiff testified during her deposition, "part of [the edger] was sticking out" into the aisle. ECF No. 18-2 at 69. The photographs indicate that the edger would be visible as an individual approached the perpendicular aisle. Once the individual had arrived at the perpendicular aisle, it would be fully visible. Though Plaintiff contends that she did not notice the edger until after she tripped over it, her subjective perception does not bear upon the inquiry. The open and obvious standard is an objective test determining the perception of a person with ordinary intelligence who had the opportunity to casually inspect the situation. Accordingly, the edger was open and obvious.

**B.**

Plaintiff argues that even if the edger were open and obvious, "special aspects" existed, making Defendant liable. The Michigan Supreme Court has explained that

> This Court has discussed two instances in which the special aspects of an open and obvious hazard could give rise to liability: when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable. In either circumstance*, such dangers are those that "give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided" and thus must be differentiated from those risks posed by ordinary conditions or typical open and obvious hazards. Further, we have recognized that neither a common condition nor an avoidable condition is uniquely dangerous.

*Hoffner*, 821 N.W.2d at 96 (quoting *Lugo v. Ameritch Corp., Inc.*, 629 N.W.2d 384, 387–388 (2001)) (emphasis present in original). Plaintiff only argues that the edger was "effectively unavoidable." She does not argue that it was "unreasonably dangerous."[1]

---

[1] In her recitation of the facts, Plaintiff refers to the edger as "unreasonably dangerous." ECF No. 20 at 1. However, she does not present an argument supporting this assertion in her analysis.

- 6 -

The court in *Hoffner* explained that "[u]navoidability is characterized by an *inability to be avoided*, an *inescapable* result, or the *inevitability* of a given outcome. Accordingly, the standard for 'effective unavoidability' is that a person, for all practical purposes, must be required or compelled to confront a dangerous hazard." *Id.* at 99 (emphasis present in original). In *Lugo v. Ameritech Corp., Inc.*, the Michigan Supreme Court used the example of a building whose interior exit is blocked by standing water. *Lugo v. Ameritech Corp., Inc.*, 629 N.W.2d 384, 387 (2001).[2] The court explained that the standing water is an open and obvious condition, but that it has special aspects because it blocks an individual from exiting the building. *See id.*

Plaintiff reasons that the condition of the edger possessed a special aspect because Mr. Podboy "brought [Plaintiff] right to the condition." ECF No. 20 at 6. Plaintiff has presented no authority providing that an employee leading an invitee to an open and obvious condition is evidence of a special condition. The presence of the edger did not create an "inescapable" result or an "inevitable" outcome. It was not preventing Plaintiff from exiting the building. Additionally, Defendant's photographs indicate that there was an abundance of space in the aisle even with the edger placement next to the shelf. ECF No. 18-5. Lastly, the fact that Mr. Podboy led Plaintiff to this area of the store belies Plaintiff's contention that his behavior created a "special aspect." There is no indication in the record that Mr. Podboy tripped on the edger or made any contact with it. He walked around the edger without an issue. Plaintiff has not demonstrated why she was unable to do the same as she was following him.

Plaintiff also presents an argument that the facts in this case are analogous to those of *Foust v. Home Depot USA, Inc.* ECF No. 20 at 6. In that case, the plaintiff injured herself after tripping on a cart. *Foust v. Home Depot USA, Inc.*, 166 F.Supp.3d 881 (E.D. Mich. 2016). The court found

---

[2] Plaintiff also quotes

that granting the defendant's motion for summary judgment was not merited because the cart had metal strips that extended into the aisle that created an independent tripping hazard. *See id.* at 891. However, as Defendant argues, "the court noted that the metal strips laid close to the floor, created an independent tripping hazard, and were similar in color to the store's cement floor making it harder to observe." The descriptions of the edger and aisleway in conjunction with the photographs indicate that it is not analogous to the cart in *Foust*. None of the edger's appendages appear to extend beyond the main body of the edger. Additionally, the edger is predominantly black and the surrounding floor is white. This differs from the metal stripes in *Foust* that were difficult to observe in relation to the floor.

**IV.**

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment, ECF No. 18, is **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint is **DISMISSED**.

Dated: April 22, 2019                s/Thomas L. Ludington
                                    THOMAS L. LUDINGTON
                                    United States District Judge